UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 5:23-cr-123-TPB-PRL

PHIL HENRY TAYLOR,

    Defendant.
_____/

**ORDER DENYING WITHOUT PREJUDICE
"DEFENDANT'S MOTION TO SEVER COUNTS"**

This matter is before the Court on "Defendant's Motion to Sever Counts," filed by counsel on February 13, 2024. (Doc. 39). On February 23, 2024, the United States filed a response in opposition. (Doc. 40). Upon review of the motion, response, court file, and the record, the Court finds as follows:

**Background**

Defendant Phil Henry Taylor has been charged in a two-count superseding indictment with theft of social security funds (Count I) and forcibly assaulting a federal officer with use of a deadly weapon (Count II). (Doc. 31).

Defendant's wife, R.J.T., was a beneficiary of the Social Security Administration's ("SSA") Title II Federal Old-Age, Survivors, and Disability Insurance program ("OASDI") and received monthly benefits. She passed away on February 26, 2016. However, the SSA was unaware that she passed away and continued depositing OASDI benefits into her bank account until March 3, 2020, resulting in $57,294 in overpayments.

R.J.T's bank statements show that the SSA overpayments were accessed

through ATM withdrawals days after R.J.T's death. Funds were later withdrawn through checks with R.J.T's name signed as payor – checks from September 2017 through November 2019 were made payable to Defendant, to Patricia Alline Clinard (a co-defendant), or cash. Surveillance footage from a bank shows Defendant negotiating two checks made payable to him, with R.J.T's signature on them even though she had passed away in 2016, on December 9, 2019, and December 11, 2019.

On July 16, 2021, special agents went to Defendants' shared trailer home to investigate. Defendant initially denied any involvement, but after he was presented with images of the forged checks and bank surveillance, he admitted to conducting the transactions. He briefly departed the residence and returned later, but he did not further speak with the agents.

Based on these allegations, a federal grand jury returned an indictment against Defendant and Clinard on December 12, 2023, charging each with one count of receipt of stolen government property. A federal arrest warrant was issued the same day. Agents contacted Defendant to advise him of the warrant. Defendant said he would surrender on January 4, 2024, and his initial appearance was scheduled. However, Defendant did not appear in court and did not surrender.

Agents went to Defendant's trailer home to execute the federal arrest warrant as part of their official duties. The property owner led the agents to the trailer and then told Defendant through the closed door to come out – Defendant refused. The agents then advised Defendant to come out – he again refused. Defendant stated that he did not want to go to jail. The agents then tried to open the door, but it was locked. The property owner did not have a key. As the agents tried to open the door again,

Defendant screamed, "Don't come in." The owner retrieved a hammer for the agents to use to breach the door. While the agents tried to breach the door, they continued asking Defendant to exit the trailer, and he continued to yell that he did not want to go to jail. One agent heard Defendant say, "If you come in here, I'm going to stab you." The agents ordered Defendant to drop any weapons he had. Defendant again threatened to stab the agents if they entered.

The agents then successfully breached the trailer door. In light of Defendant's threats, two of the agents had their firearms drawn. They observed Defendant standing approximately three to five feet from the door where they stood, holding two large knives with blades pointing up, and standing with his knees bent in what one agent has characterized as a "fighting stance." The agents again told Defendant to drop the knives. He hesitated for a moment before dropping the knives at his feet. The agents detained Defendant and transported him to the Marion County jail.

Based on Defendant's alleged conduct on January 4, 2024, a grand jury returned a superseding indictment on January 9, 2024, which charges Defendant with an additional count: forcibly assaulting a federal officer with use of a deadly weapon. In the instant motion, Defendant seeks to dismiss the sever Counts I and II pursuant to Federal Rule of Criminal Procedure 14(a).

## **Analysis**

In his motion, Defendant argues that the assault charge is "unduly inflammatory and prejudicial," requiring severance of the counts. He also argues that the two types of charges are not of the same or similar character, and "most" evidence does not overlap.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that an indictment may charge a defendant in separate counts with multiple offenses if the offenses "are of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The rule is "broadly construed in favor of the initial joinder" to promote judicial economy and efficiency. *See United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990) (quoting *United States v. Davis*, 773 F.2d 1180, 1181 (11th Cir. 1985)).

Under Rule 14 of the Federal Rules of Criminal Procedure, a court may sever counts if the joinder of offenses appears to prejudice a defendant. Fed. R. Crim. P. 14(a). Granting or denying a severance of counts is within the discretion of the trial court. *See, e.g., United States v. Benz*, 740 F.2d 903, 911 (11th Cir. 1984). To warrant severance, a defendant must show that joinder of the counts would result in "clear and compelling prejudice." *United States v. Hammond*, 781 F.2d 1536, 1539 (11th Cir. 1986) (quoting *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. 1981)). A defendant is not able to show the requisite prejudice if evidence of the second offense joined in the indictment would be admissible without being separately charged. *See United States v. Watson*, 866 F.2d 381, 385 (11th Cir. 1989).

The Government maintains that evidence of the assault on law enforcement agents would be admissible in a trial on the theft count to prove consciousness of guilt for the underlying offense. The Court generally agrees with this proposition. At this juncture, even though the conduct underlying the theft and assault charges occurred at different times and in different places, they seem sufficiently intertwined.

Specifically, it appears that evidence of the events of January 4, 2024, would be admissible to show Defendant's consciousness of guilt in the theft offense since his alleged threats and actions that gave rise to the assault charge arguably demonstrate his desire to avoid arrest for the theft offense. *See id.* at 385 (finding no prejudice in trial court's decision declining to sever drug charges and weapons charges where evidence of attempt to avoid capture that gave rise to the weapons charges would have been admissible to prove consciousness of guilt for the underlying drug offenses); *United States v. Hill*, No. 1:18-CR-277-AT-JKL, 2021 WL 2964726, at *5-7 (N.D. Ga. Feb. 4, 2021) (severance inappropriate where evidence of attempt to flee law enforcement and injury to agent admissible to show consciousness of guilt as to drug charges), *adopted by* 2021 WL 2253541 (N.D. Ga. June 3, 2021).

Consequently, the motion is denied. This denial, however, is without prejudice, and the severance issue may be raised again should new information come to light.

**DONE** and **ORDERED** in Chambers, in Ocala, Florida, this 7th day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**